- 1 -

Nicole Owens
Federal Public Defender
Neil Price
Assistant Federal Defender
Federal Defender Services of Idaho
757 N. 7th St.
Pocatello, Idaho 83201
(208) 478-2046

Attorneys for Andrea May Major

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| United States of America<br><br>  Plaintiff<br><br>v.<br><br>Andrea May Major<br><br>  Defendant | No. 4:24-cr-00200-BLW<br><br>**Motion to Dismiss the Indictment** |

- 1 -

## Introduction

Andrea May Major respectfully requests this Court dismiss her criminal Indictment under Federal Criminal Rule of Criminal Procedure 12(b)(3)(B).

The government accuses Ms. Major of illegally hunting mountain lions. To properly state a charge under this section of the Lacey Act, the Indictment must allege three elements. First, Ms. Major knew that the mountain lions "had been" taken, possessed, transported, or sold "in violation of or in a manner unlawful under" federal or state laws or regulations. Ninth Cir. Model Crim. Jury Instr. 24.23. Second, the market value of the mountain lions exceeded $350. *Id.* Third, Ms. Major transported, sold, received, or acquired the mountain lions by knowingly engaging in conduct that involved its sale.

Elements one and three demonstrate the two-step process that is essential to a Lacey Act violation. The initial illegal taking must take place *and then* the defendant must transport, sell, receive, or acquire the animal by engaging in conduct involving its sale. In Ms. Major's case, the Indictment fails to allege the first and third elements and so fails to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(iii).

***First,*** for two charges, the Indictment does not allege the mountain lions were taken illegally. Counts Twelve and Thirteen allege that the taking violated Idaho laws and regulations, but do not allege that Ms. Major, a licensed hunting guide, acted as an outfitter without *either* an outfitter's or

guide's license, as required by Idaho state law. Ms. Major had a guide's license, which is sufficient under a plain text reading of the statute.

**Second,** the Indictment does not allege that Ms. Major transported, sold, received, or acquired the mountain lions by knowingly engaging in conduct that involved their sale *after* an illegal taking. In other words, even if the Indictment does allege the first element, that there was an unlawful taking, it does not allege the subsequent unlawful action required for the third element. Instead, it wrongly collapses the first and third elements, treating the illegal taking as the subsequent action. This error is also fatal to the conspiracy count, which fails to allege that Ms. Major plotted to do anything with the mountain lions after they were taken.

For these reasons, the Indictment against Ms. Major should be dismissed with prejudice.

**Argument**

In Counts Six, Seven, Nine, Ten, Twelve, and Thirteen, the government alleges that Ms. Major committed substantive violations of the Lacey Act. To properly state these charges, the Indictment must allege a two-step violation: knowledge of the initial illegal taking *followed by* the defendant's conduct involving the animal's sale. The Indictment here does not allege either step and so should be dismissed.

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted). "The indictment either states an offense or it doesn't." *Id.*

### I. The Indictment must allege both steps of a Lacey Act violation.

The first step of a Lacey Act violation, and first element of the model jury instruction, requires knowledge of the initial illegal taking. This taking is discussed in the past tense. The statute requires that a defendant know that the animals "***were*** taken" illegally. 16 U.S.C. § 3373(d)(1)(B) (emphasis added). The second step, and third element of the model jury instruction, must occur *after* the illegal taking, when a defendant knowingly imports, exports, transports, or sells the wildlife that was already illegally taken.

The Lacey two-step is clearly set out in Ninth Circuit caselaw. The court has held that "[i]n order to violate the Lacey Act a person must do something to wildlife that has *already been* 'taken or possessed' in violation of the law." *United States v. Carpenter*, 933 F.2d 748, 750 (9th Cir. 1991) (emphasis added). That is, the illegal taking must occur prior to the purchase or sale. *Id*. at 751 ("The kind of acquiring condemned is of [an animal] already taken."). Indictments that "collapse the two steps required by [the Lacey Act] into a single step" therefore fail to state an offense. *Id*.

The Lacey two-step is statutory. "[T]he plain language of [section] 3373(d)(1)(B) limits the felony liability under that section to instances where a defendant knows that wildlife 'were' illegally taken before he 'sells' or 'purchases' the wildlife." *United States v. Fejes*, 232 F.3d 696, 700 (9th Cir. 2000). Other courts agree. *See United States v. Romano*, 137 F.3d 677, 681-82 (1st Cir. 1998) ("Congress' use of the word 'were' [in section 3373(d)] implies that, at the time of the purchase, the underlying taking . . . must have already occurred"); *United States v. Kraft*, No. 03-cr-315, 2005 WL 578313, at *1-3 (D. Minn. March 11, 2005) (analyzing section 3373(d) to support dismissal of Lacey Act counts because "the Government has not pled the two distinct steps necessary to allege a Lacey Act" violation).

**II.   The government fails to allege the first step of a Lacey Act violation in Counts Twelve and Thirteen.**

At Lacey's first step, the government must allege the mountain lions were illegally taken. Counts Twelve and Thirteen say that the takings violated Idaho statutes or regulations. But the facts alleged in the indictment contradict that allegation.

The crux of these four counts is that the taking was illegal because Mr. Kulow and Ms. Major "act[ed] in the capacity of an outfitter by directly booking hunting clients and accepting payment, without an outfitting license and outside of and without the knowledge or consent of the Licensed Outfitter," which violated Idaho Code § 36-2104. The problem is that the indictment also alleges that Mr. Kulow and Ms. Major held Idaho guide licenses. ¶ 4. That is enough to satisfy the statute.

Idaho Code § 36-2104 plainly states the licensing requirement for Idaho outfitters and guides. It reads:

> LICENSE A PREREQUISITE FOR OUTFITTING AND GUIDING. (1) It is a misdemeanor for any person to engage in the business of or act in the capacity of an outfitter or outfitting, *or* in the occupation of guiding, unless such person has first secured an outfitter's *or* guide's license in accordance with the provisions of this chapter, or for any person to knowingly and willingly conspire to violate the provisions of this chapter.

(emphasis added). The licensing provision does not make obtaining an outfitter's license a prerequisite to acting the capacity of an outfitter, nor does it make obtaining a guide's license a prerequisite to acting in the capacity of a guide. Instead, the statute mandates that an individual must obtain either an

- 6 -

outfitter's *or* guide's license as a necessary "prerequisite" to "engag[ing] in the business of or act[ing] in the capacity of an outfitter or outfitting, or in the occupation of guiding." *Id.*

In questions of statutory interpretation, words "will be interpreted as taking their ordinary, contemporary, common meaning." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012). The Idaho outfitting and guiding statute creates a misdemeanor if an individual fails to obtain *either* "an outfitter's *or* guide's license." *Id.* (emphasis added). Here, or means or. And the government concedes that Mr. Kulow and Ms. Major were operating as licensed hunting guides during the relevant period outlined in the Indictment. *See* Indictment ¶ 4.

Therefore, Counts 12 and 13 should be dismissed for failing to allege a violation of the underlying Idaho law.[1]

### III. The government fails to allege the second step of a Lacey Act violation.

The government alleges that Ms. Major took part in the harvest of six mountain lions, which was illegal because she "provided outfitting and guiding services" for various Unindicted Client Hunters ("UCH") but a "Licensed

---

[1] Although federal courts defer state law interpretation to the state's highest court, *In re Kirkland*, 915 F.2d 1236, 1238 (9the Cir. 1990), counsel has found no published Idaho state court decisions interpreting the statutory language in Idaho Code § 36-2104.

- 7 -

Outfitter did not arrange the booking, negotiate the terms, nor accept payment":

- From December 10-14, 2021, Ms. Major "provided outfitting and guiding services in southeast Idaho" for a couple from Texas, UCH #5 and UCH #6. Indictment ¶ 45. Ms. Major provided guiding services on the two days that each hunter harvested a mountain lion. *Id*. Then, around January 10, 2022, "unknown co-conspirators shipped the two mountain lions killed . . . to a taxidermist in Bonham, TX." *Id.* ¶ 46. *See also* Count Six (UCH#5's mountain lion); Count Seven (UCH#6's mountain lion.)

- On January 6, 2022, she "provided outfitting and guiding services for UCH#8, leading to the harvest of a mountain lion," which was "transported off National Forest land following the kill" and then transported by UCH#8 "to a taxidermist in St. George, UT." *Id.* ¶ 54–56. *See also* Count Nine (UCH#8's mountain lion).

- On January 10, 2022, she "provided outfitting and guiding services for UCH#9, leading to the harvest of a mountain lion," which "was transported off National Forest land following the kill." *Id.* ¶ 60. Later "an unknown co-conspirator(s) shipped the mountain lion killed by UCH#9 to a taxidermist in Bonham, TX. *Id.* ¶ 62. *See also* Count Ten (UCH#9's mountain lion).

- Between October 17, 2021, and January 28, 2022, Ms. Major "provided outfitting and guiding services to UCH#11 (father) and UCH#12 (minor daughter), for two mountain lion hunts in Idaho. *Id.* ¶ 67. Around January 26, 2022, both UCH#11 and UCH#12 harvested mountain lions. *Id.* ¶ 69–70. Around February 4, 2022, Mr. Kulow shipped the two lions to a taxidermist in Libby, Montana. *Id.* ¶ 72. Count Twelve (UCH#12's mountain lion); Count Thirteen (UCH#11's mountain lion.)

That is the entirety of the allegations. The charges themselves add no new information. Instead, they simply say that on the alleged dates, Ms. Major and her alleged co-conspirators "did transport, sell, receive, or acquire wildlife in interstate commerce," the mountain lion(s), "which was taken, possessed, sold,

- 8 -

or transported in violation of the law" of the State of Idaho or the United States, which Ms. Major "knew was taken, possessed, transported, or sold in violation of and in a manner unlawful under the laws and regulations of the state."

The only act the government alleges Ms. Major committed is the provision of "guiding and outfitting services" for various UCH's "without the knowledge or consent of the Licensed Outfitter." For the purposes of a motion to dismiss, that allegation satisfies the first step of the Lacey Act. But the government does not allege any conduct that occurred *after* the illegal taking that would satisfy the second step.[2] The Indictment therefore collapses the Lacey two-step into "into a single step" and must be dismissed. *Carpenter*, 933 F.2d at 750.

---

[2] Relatedly, in *United States v. Santillan*, 243 F.3d 1125, 1129 (9th Cir. 2001), the Ninth Circuit declared that "the felony provision requires two levels of knowledge." A person must know: 1) that fish or wildlife was imported or exported; and 2) "'that the fish or wildlife or plants were taken, possessed, transported, or solid in violation of, or in a manner unlawful under, any underlying law, treaty or regulation.'" *Id.* (quoting 16 U.S.C. §§ 3373(d)(1)). Otherwise, an importer or exporter of fish or wildlife would be "in peril of strict liability for a Lacey Act felony conviction merely because it turns out that there was illegality, unknown to the importer [or exporter], associated with its taking." *Santillan*, 243 F.3d at 1129. The Court held that "the *mens rea* provisions in the Lacey Act are important to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* (quoting *Carter v. U.S.*, 530 U.S. 255, 120 S.Ct. 2159, 2169 (2000)).

The Indictment's failures clearly warrant dismissal of the substantive charges, Counts Six, Seven, Nine, Ten, Twelve, Thirteen. But the conspiracy charge, Count One, should also be dismissed.

"The essential elements of a conspiracy are 'an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.'" *United States v. Thomas*, 887 F.2d 1341, 1347 (9th Cir. 1989) (*quoting United States v. Reese,* 775 F.2d 1066, 1071 (9th Cir. 1985)). "To prove the existence of a conspiracy, the Government must establish that there was an agreement among two or more persons to accomplish an unlawful objective, and that the defendant committed an overt act in furtherance of the conspiracy." *United States v. LeVeque*, 283 F.3d 1098, 1106 (9th Cir. 2002). *See also* 18 U.S.C. § 371.

Here, it is not enough for the Indictment to infer that Ms. Major may have participated in a conspiracy to commit some underlying state or federal law violation. Specifically, Count 1 of the Indictment must also contain some facts for which an agreement can be inferred. *LeVeque*, 283 F.3d at 1107 (noting that while "[a]n agreement may be inferred from the evidence . . . the Government must offer some evidence from which an agreement among the alleged co-conspirators can be inferred."). But here the "Overt Acts" section of

the Indictment merely alleges that Ms. Major "provided outfitting and guiding services" for several UCH's on various dates.

The threadbare Indictment does not put forth facts supporting an allegation that Ms. Major "knowingly and willfully conspired and agreed" with either Mr. Kulow, Mr. Eborn, or the UCH's to complete the Lacey Act's necessary second step of either "import[ing], export[ing], transport[ing], selling, receiv[ing], acquir[ing], or purchasing" wildlife that the parties knew was taken illegally. 16 U.S.C §§ 3372(a)(1). Thus—assuming the Court finds the mountain lions at issue were taken contrary to any of the laws or regulations cited in the Indictment—Count 1 should be dismissed for failing to allege participation in a conspiracy to violate the Lacey Act.

## Conclusion

Ms. Major respectfully requests that this Court grant her motion to dismiss Counts One, Six, Seven, Nine, Ten, Twelve, and Thirteen of the Indictment with prejudice.[3]

---

[3] Ms. Major's plea for dismissal with prejudice is warranted. Allowing the government to re-initiate prosecution of those counts would permit the government to evade Idaho Code § 19-403 which would otherwise bar prosecution for the alleged underlying misdemeanor violations of Idaho Code § 36-2104. This would amount to substantial and unfair prejudice to Ms. Major.

Dated: February 7, 2025,  Nicole Owens
Federal Public Defender
By: Neil Price

<u>/s/ D. Neil Price</u>

Federal Defender Services of Idaho
Attorneys for Andrea May Major