JUSTIN D. WHATCOTT IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
JUSTIN K PASKETT, IDAHO STATE BAR NO. 9066
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
801 E. SHERMAN AVE SUITE 192
POCATELLO, ID 83201
TELEPHONE: (208) 478-4166
FACSIMILE: (208) 478-4175

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREA MAY MAJOR,<br><br>Defendant. | Case No. 4:24-CR-00200-BLW<br><br>**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS** |

The United States of America, by and through Justin D. Whatcott, Acting United States

Attorney, and the undersigned Assistant United States Attorney for the District of Idaho,

respectfully submits this response in opposition to the Motion to Dismiss filed by defendant

Andrea May Major (Major). (ECF No. 44).  Major's motion, filed under Federal Rule of

Criminal Procedure 12(b)(3)(B) fails as the indictment is correctly charged on clear statutory and

legal grounds. Major's motion misinterprets and mischaracterizes the indictment, the elements of

the Lacey Act, and Idaho law, and ignores violations of federal regulations. For the reasons

provided below, the motion should be denied.

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

**OVERVIEW**

The Indictment charges Major with one count of Conspiracy (Count One) and multiple

Lacey Act violations (Counts 6, 7, 9, 10, 12 and 13) arising from illegally outfitted and guided

mountain lion hunts in Idaho and Wyoming. (ECF No. 2.)

Under Idaho law, requiring hunting outfitters to be licensed ensures that limited wildlife

resources are responsibly managed and protected, while also promoting public safety and fair

access. *See generally* Idaho Code § 36-2101 (declaring that hunting, fishing, and outfitting

activities must be regulated in the public interest). Additionally, Idaho's wildlife and game are

finite, the licensing process caps the number of approved outfitters operating in specific

geographic areas, thus preventing overharvest and undue competition for other guided and non-

guided public hunts. *See MOU Between Idaho Department of Fish and Game and Idaho*

*Outfitters and Guides Licensing Board (2019).*[1]  In turn, licensed guides are only authorized to

guide hunts under a licensed outfitter for the same reason: by tying each guide's authorization to

an outfitter (which are limited in number) operating under a specific geographically limited

region, Idaho ensures that guiding activity also remains numerically limited, and tied to the

outfitter's assigned hunting region, thereby preserving game populations, reducing hunter

competition, and maintaining orderly use of public land and resources. Idaho Code §§ 36-2102,

36-2104.

The Indictment alleges that neither Major, nor her co-defendants were licensed outfitters,

and that she and her co-defendants engaged in outfitted and guided hunts outside of the

employment or authorization of any licensed outfitter. The indictment also alleges that neither

---

[1] A copy of the MOU can be found at (https://dopl.idaho.gov/wp-content/uploads/2023/08/OGLB-IDFG-MOU-with-OGLB.pdf.)

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

Major nor her co-defendants held the necessary National Forest System commercial use permit, making each guided hunt on National Forest land a violation under federal law. By conducting guided hunts on National Forest land without outfitter licensing and without the requisite National Forest System permit, Major and her co-defendants violated both Idaho law and federal regulations—making each hunt illegal before any animals were taken. Each illegal hunt resulted in a killed mountain lion. Each mountain lion was transported after it was killed. (*See* Indictment ¶¶ 1–7, 26–28, 45–46, 67–72.)

## LEGAL STANDARDS

Defendant Major's motion cites Federal Rule of Criminal Procedure 12(b)(3)(B) as a basis for dismissal. Major specifically argues that 12(b)(3) subsections (iii) lack of specificity, and/or subsection (v), of failure to state an offense, justify a dismissal of the indictment.

In analyzing the sufficiency of an indictment on a pre-trial motion for failure to state an offense, courts are bound by the four corners of the indictment. *United States v. Lyle,* 742 F.3d 434, 436 (9th Cir. 2014). Courts must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged. *Id.* A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence as the court should not consider evidence not appearing on the face of the indictment. *See United States v. Jensen*, 93 F.3d 667, 669 (quoting *United States v. Marra*, 481 F.2d 1196, 1199–1200 (6th Cir.1973)).

The "unavailability of Rule 12 in determination of general issues of guilt or innocence ... helps ensure that the respective provinces of the judge and jury are respected....*" United States v. Nukida*, 8 F.3d 665, 670 (9th Cir.1993). *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002) ('the indictment either charges an offense or it doesn't. There is no reason to conduct an evidentiary hearing.)

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

In this case the four corners of the indictment appropriately track, and charge, the necessary elements and "steps" of the Lacey Act. As alleged in the indictment, mountain lion hunts were: **first**, illegally outfitted, **second**, illegally guided, **third**, illegally killed—because the hunt was illegally outfitted and guided—, and **fourth**, illegally transported. Neither Major, nor her co-defendants were licensed to outfit, or authorized by a licensed outfitter to guide these mountain lion hunts, irrespective of their guiding license status.

The government now addresses Major's arguments in turn.

## ARGUMENT

**A.      Counts 6, 7, 9, 10, 12 and 13 of The Indictment Are Properly Drafted and Track the Language of the Lacey Act.**

The Lacey Act language charged against Major and her associates consists of the following elements:

1)      the transport, sale, receipt… of mountain lions (with some counts crossing state lines),

2)      with a market value in excess of $350,

3)      which Major and her co-defendants knew were taken or sold —by the provision of outfitting and guiding services—in violation of the federal or state law *before* a transport and take occurred.

As charged, there has been no 'collapsing' of steps. Each step is a separate and distinct step, with a temporal distinction, as instructed in *United States v. Carpenter*, 933 F.3d 748, 75—751 (9th Cir. 1991). Unlike *Carpenter*, where "the very act of knowingly taking the bird in violation of law [was]…the act of acquiring it." *Id.*  That is not the case here.

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

There are several distinct and temporally separated acts: 1) illegally contracting and selling a commercially outfitted hunt without an outfitting license; 2) illegally guiding a hunt without an outfitting license or outside the employment and authorization of a licensed outfitter; 3) illegally guiding on National Forest land without a special use permit; 4) killing—"taking"—a mountain lion; and  5) transporting the mountain lion from the field—and in some counts—across state lines.

Here, each guided mountain lion hunt was unlawful under state law before the take or transportation for two distinct reasons, first, Major and her co-defendants acted or conspired to act as outfitters—contracting and selling guided hunts, and accepting payments—, second, they guided outside the employment or authorization of a licensed outfitter. The contract and sale of each illegally guided mountain lion hunt constituted an illegal act. It is deemed a sale of wildlife to provide money for the guiding, outfitting or other services for, *inter alia*, the illegal take and transport of wildlife under the Lacey Act. 16 U.S.C. §3372(c)(1)(A). Similarly, the act of guiding outside of the employment or authorization of a licensed outfitter also constituted an illegal act. Both of those events precipitated the killing of each mountain lion and rendered the killings illegal. After the illegal killing, each mountain lion was transported from the field. *Carpenter* and its teachings are in no way offended here. *See*, *United States v. Atkinson*, 966 F.2d 1270, 1273 (9th Cir.1992).

Additionally, Major and her co-defendants committed violations of federal law by conducting outfitting and guiding service on National Forest System lands without the necessary National Forest System commercial use permit.[2]

---

[2] 36 Code of Federal Regulations § 261.10(c) prohibits commercial activity on National Forest land absent a special-use authorization (permit). 36 Code of Federal Regulations § 261.8(a) states: *(The following are prohibited to the extent Federal or State law is violated: Hunting, trapping, fishing, catching, molesting, killing or having in possession any kind of wild animal…)*

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

Although the outfitter Major and her co-defendants previously worked for held the necessary permit issued by the U.S. Forest Service to conduct guided hunts on the Caribou-Targhee National Forest, Major and co-defendants, guided hunts outside the employment and authorization of that outfitter, even holding themselves out to the public as a different company in many instances. Lacking the necessary permits these hunts were: 1) illegally sold to clients outside federal permitting requirements (Title 36 CFR provisions); 2) illegally guided on National Forest land outside the federal permitting requirements; 3) mountain lions were taken by clients on the illegally guided hunts in violation of federal regulation; and 4) the illegally taken mountain lions were transported off National Forest land.

Major is charged with knowing the hunts were illegal before any animal was killed. The government will have to prove at trial that Major had foreknowledge that the illegal take or other illegal acts were to occur. Transportation of the game after the kill provides for the second step. All of this satisfies the authorities cited by Major as to the knowledge and temporal element of an illegal take and transport; *United States v. Fejes* 232 F.3d 696, 700 (9th Cir. 2000), *United States v. Romano*, 137 F.3d 677 (1st Cir.1998) and *United States v. Kraft*, No. 03-cr 315, 2005 WL 578313 (D.Minn. March 11, 2005).

In *United States v. Jablonsky*, the Ninth Circuit rejected nearly identical arguments about a "lawful take" where the outfitter lacked the proper permit. *United States v. Jablonsky*, 776 F. App'x 952, 953 (9th Cir. 2019) (*Unpublished)*. In *Jablonsky* the defendant—a licensed outfitter and guide—claimed the hunt was lawful because the hunter-client possessed valid mountain lion tags and permits; however, the defendant had failed to obtain a special-use permit required to outfit hunts on National Forest lands where the take occurred.

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

The court affirmed *Jablonsky's* Lacey Act conviction, holding that "despite his client's having all the necessary permits to hunt, the fact remains that [the defendant] had no legal authority to provide the commercial outfitting," which rendered the hunt an illegal "sale" under 16 U.S.C. § 3372(c). *Id*. Here, the absence of legal authority to provide commercial outfitting and guiding is even more flagrant. Like *Jablonsky,* neither Major nor her co-defendants possessed the requisite National Forest use permit, to outfit, or guide hunts on National Forest land, but unlike *Jablonsky*—who possessed the appropriate outfitting license—Major and her co-defendants were engaged in outfitting and guiding without a license to do so. *Id.*

Additionally, Major is charged with aiding and abetting in the substantive counts, and in the conspiracy count—although not directly plead.[3]  Federal aiding and abetting has two primary components: "a person is liable under §2 if (and only if) the person (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission*."* *Rosemond v. United States*,134 S. Ct. 1240, 1245 (2014). The defendant's conduct need not facilitate each and every element of the crime; a defendant can be convicted as an aider and abettor even if the defendant's conduct "relates to only one (or some) of a crime's phases or elements." *Id.* at 1246–47. The intent requirement is satisfied when a person actively participates in a criminal venture with advance knowledge of the circumstances constituting the elements of the charged offense. *Id*. at 1248–49.

---

[3] Major also alleges, in the opening summary, that Count 1 of the indictment, alleging conspiracy, fails due to a failure to allege Major "plotted to do anything with the mountain lions after they were taken.' (ECF No. 44, pg 3.) The argument has no further elaboration in the defendant's brief. Even so, such an allegation is unnecessary under conspiracy law, for a jury need only convict based on the finding of an agreement and on one agreed overt act. An indictment is not required to list every conceivable 'allegation' revealed by an investigation.

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

Here, the Government has alleged that Major actively participated in guiding hunts. The act of guiding alone with the requisite intent is sufficient to aid and abet. Moreover, Rule 12 (b) does not permit argument nor the court to make any factual findings about Major's intent, state of mind, or the sufficiency of the government's evidence. *Nukida*, at 670 (9th Cir.1993). Such determinations are for the jury to decide. *Id.*

**B.    Counts 12 and 13 Are Appropriately Charged**

Major's argument that she was a properly licensed 'guide' under Idaho state law ignores the language of Idaho Code § 36-2102, and further ignores the federal permitting obligations under applicable Code of Federal Regulations provisions. Idaho Code § 36-2102 defines a "Guide" and expressly states that a guide cannot operate independently or outside the authorization of a licensed outfitter: "[a]ny such person not employed by a licensed outfitter who offers or provides facilities or services [of an outfitter] shall be deemed in violation of the provisions of this chapter…"

A guide cannot simply decide to guide hunts on their own. Such rogue guiding would undermine the entire regulatory purpose, of ensuring public safety, preventing overharvest of game, and curtailing undue competition with other guided and non-guided hunts. *See MOU (2019).* As alleged in the indictment, each one of the guided mountain lion hunts was in violation of the licensing and operational requirements of outfitters and guides, as well as commercial permitting on National Forest land. *See* Idaho Code §§ 36-2102, 36-2104, and 36 CFR § 261.10(c). There is no failure of the first-step of the Lacey Act in Counts 12 and 13. The Defendant's motion should be denied.

**C.  A Pre-Trial Fact-Finding Mission is Not Authorized by Rule 12(b)**

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**

Major's motion may not be used as a device for a summary trial of the evidence. In some respects, Major's motion resembles a Motion for a Bill of Particulars. Major claims that the indictment fails to allege particular facts. In this Opposition, the United States has provided the legal and factual theories it will prove at trial, perhaps eliminating any further need for a bill. Nevertheless, if Major seeks additional facts as to proof, this motion is not an appropriate mechanism to pursue those questions.

## **CONCLUSION**

The indictment in this case is extensive and more than meets the Government's obligation to allege facts as to each element for each count in the indictment. Major's motion appears to misread the order of proof, and the elements of proof relating to the Lacey Act charges, the Conspiracy charge and the substantive provisions of Idaho law. Additionally, Major has also been charged under an aiding and abetting theory in connection with Major's alleged criminal conduct, providing an even broader legal theory for her criminal culpability. Based on the foregoing the motion to dismiss should be denied.

Respectfully submitted this 7th day of March 2025.

> JUSTIN D. WHATCOTT
> ACTING UNITED STATES ATTORNEY
> By:
>
>
> /s/_____
> JUSTIN K PASKETT
> Assistant United States Attorney

**GOVERNMENT'S RESONSE TO DEFENDANT'S MOTION TO DISMISS**