UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREA MAY MAJOR,<br><br>Defendant. | Case No. 4:24-cr-00200-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Andrea Major's Motion to Dismiss (Dkt. 44). The Court held oral argument on May 8, 2025, and now issues its decision. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

Ms. Major and her two codefendants, Chad Kulow and Lavoy Eborn, face charges stemming from a series of illegal mountain lion hunts. All three defendants were hunting guides employed by a properly licensed outfitter. According to the indictment, Ms. Major and her codefendants guided hunts without their outfitter's knowledge or supervision, under the auspices of an unlicensed business called Lethal Guides and Outfitters. These unlawful hunts resulted in the killing of at least twelve mountain lions in Idaho and Wyoming, which were then transported to other states. Ms. Major faces one count of Conspiracy and six counts of Lacey Act violation.

**ORDER - 1**

## LEGAL STANDARD

Rule 12 of the Federal Rules of Criminal Procedure authorizes a defendant to move to dismiss an indictment for reasons including lack of specificity and failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). On a motion to dismiss for failure to state an offense, "the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). This is a purely legal question, and the court must accept all factual allegations as true. *Id.*

When a defendant seeks to dismiss an indictment for lack of specificity, the Court reviews the indictment "in its entirety" and with "common sense and practicality." *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) The test is not "whether the indictment could have been framed in a more satisfactory manner," but "whether it conforms to the *minimal* constitutional standards." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009). An indictment meets constitutional and procedural muster if it "states the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and enable him to plead double jeopardy." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000).

## ANALYSIS

The Lacey Act makes it unlawful for any person "to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken or possessed in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law." 16 U.S.C. § 3372(a)(1). This is a two-step inquiry: (1) the wildlife is illegally taken, and (2) the defendant does something to the illegally taken wildlife. *United States v.*

**ORDER - 2**

*Carpenter*, 933 F.2d 748, 750 (9th Cir. 1991). Ms. Major brings three challenges to the indictment, which the Court will discuss in turn.

### 1.  The Lacey Two-Step Analysis

Ms. Major first argues that all the Lacey Act charges against her—Counts Six, Seven, Nine, Ten, Twelve, and Thirteen—fail to state a claim because they do not allege the second step of a Lacey Act violation.

The Ninth Circuit is clear that the Lacey Act requires two discrete acts. First, the wildlife is taken illegally, then the defendant does something to it. This reflects the law's underlying focus on commercial conduct and distinguishes the Lacey Act from state and federal laws that merely prohibit the taking of wildlife. *United States v. Senchenko*, 133 F.3d 1153, 1157 (9th Cir. 1998); *see* 16 U.S.C. § 3373(d)(1)(B) (making it a felony to "knowingly engag[e] in conduct that involves . . . the intent to sell . . . wildlife . . . with a market value in excess of $350"). The indictment accuses Ms. Major of transporting the mountain lions after the illegal hunts, but she says that this is insufficient to meet the statute's second step. *Def.'s Mtn.* at 9, Dkt. 44.

This argument reflects a disconnect in the statutory language. While one section of the law expressly mentions transportation—making it illegal "to import, export, *transport*, sell, receive, acquire, or purchase," § 3372(a)(1) (emphasis added)—the penalties provision refers only to conduct involving "intent to sell or purchase," § 3373(d)(1)(B). Based on the latter, Ms. Major insists that transportation of wildlife is irrelevant, pointing to a Ninth Circuit footnote that states, "Transportation of wildlife could never be the sole overlying conduct for a felony under this provision." *United*

**ORDER - 3**

*States v. Fejes*, 232 F.3d 696, 702 n.6 (9th Cir. 2000). A Minnesota district court,

expanding on this idea, rejected the Government's contention that the Lacey Act's

"second step must be construed in a fashion broad enough to encompass transportation."

*United States v. Kraft*, No. 03-315, 2005 WL 578313, at *2 (D. Minn. Mar. 11, 2005).

The problem is that the indictment does not simply allege that Ms. Major

transported the illegally taken mountain lions. It also accuses her of selling them. The

Lacey Act specifically defines "sale" to include "guiding, outfitting, or other services."

§ 3372(c)(1)(A). For this reason, Ms. Major's reliance on the *Fejes* footnote is misplaced,

and a more detailed analysis of the case reveals that it in fact supports the Government's

position. In *Fejes*, the defendant was a licensed guide in Alaska who took customers on

illegal caribou hunts (in violation of a state regulation prohibiting hunting on the same

day a hunter is airborne) then helped them transport the meat back to their home states.

*Fejes*, 232 F.3d at 698-99. The Ninth Circuit found that he violated the Lacey Act,

explaining that "both the plain language of the statute and the legislative history indicate

that the provision of guiding or outfitting services for the illegal taking of game

unambiguously falls within the criminal enforcement provisions of the Lacey Act." *Id.* at

701. Further, although the opinion could perhaps have been clearer about the

particularities of "overlying" and "underlying" conduct, the Ninth Circuit recognized that

"felony liability could be imposed for either the transportation or sale of wildlife taken in

violation of state law." *Id.* In other words, the key issue is the commercial character of

the conduct, not the specific thing that was done to the wildlife. *See Senchenko*, 133 F.3d

**ORDER - 4**

at 1157; *see also* S. Rep. No. 97–123, at 3 (1981) (explaining that the Act's purpose is to punish "unlawful commercial activity" involving wildlife).

*Fejes* mirrors the circumstances here. The indictment claims that Ms. Major provided guiding services, which resulted in the illegal "take" of mountain lions, which were then transported out of state. These are each distinct acts, and Ms. Major's conduct is not merely a violation of state law, as she suggests. Like in *Fejes*, the sale and transportation of the wildlife in interstate commerce each create grounds for federal jurisdiction. Without this foundational commercial context, the transportation of wildlife likely would not be a Lacey Act violation, as the Minnesota district court concluded. *See Kraft*, 2005 WL 578313, at *2. But that is a hypothetical, not what the indictment sets out. The facts as alleged by the Government articulate both steps of a Lacey Act—Ms. Major transported the mountain lions after they had been illegally taken and sold. That is enough to survive a motion to dismiss.

Thus, Counts Six, Seven, Nine, Ten, Twelve, and Thirteen of the indictment properly allege the second step of a Lacey Act violation.

## 2. Illegal Taking

Ms. Major's next seeks to dismiss Counts 12 and the 13 because they do not allege an illegal taking of the mountain lions. This argument hinges on a creative but unpersuasive interpretation of Idaho law governing guides and outfitters.

The indictment alleges that Ms. Major unlawfully acted in the capacity of an outfitter without having an outfitter's license. In Idaho, "[i]t is a misdemeanor for any person to engage in the business of or act in the capacity of an outfitter or outfitting, or in

ORDER - 5

the occupation of guiding, unless such person has first secured an outfitter's or guide's license in accordance with the provisions of this chapter." Idaho Code § 36-2104. Ms. Major reads the statute to require that an outfitter possess *either* an outfitter's license or a guide's license—not that an outfitter must have an outfitter's license and a guide must have a guide's license. In addition to being unintuitive, her interpretation squarely contradicts Idaho Code § 36-2102, which provides that any guide "not employed by a licensed outfitter who offers or provides facilities or services" violates the law.

In short, Ms. Major, as a licensed guide, could only offer services if she worked under the authority of an outfitter. The indictment alleges that she acted outside these confines, which, if true, would mean that the mountain lions were illegally taken. This is enough to state a claim for the first step of a Lacey Act violation.

## 3. Lack of Specificity

Finally, Ms. Major seeks the dismissal of the Conspiracy count based on lack of specificity. She claims that the indictment fails to articulate "facts from which an agreement can be inferred." *Def.'s Mtn.* at 10, Dkt. 44.

The Court disagrees with this characterization. The indictment sets out numerous facts from which an agreement between Ms. Major and her codefendants can be inferred. These include the social media page for the unlicensed business, Lethal Guides and Outfitters, operated by Ms. Major and Mr. Kulow; booking and payment practices by each defendant; specific guided hunts; and Mr. Kulow's attempt to pay the licensed outfitter after it learned of the defendants' unsanctioned activities. *Indictment* ¶¶ 26-74,

ORDER - 6

Dkt. 2. This is enough to apprise Ms. Major of the charges against her and allow her to plead double jeopardy. This count of the indictment passes constitutional muster.

## ORDER

**THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Dkt. 44) is **DENIED**.

DATED: June 2, 2025

B. Lynn Winmill
U.S. District Court Judge

**ORDER - 7**